[Cite as *Talismanic Properties, L.L.C. v. Cedar Grove of Tipp City Homeowner's Assn., Inc.*, 2026-Ohio-2004.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| TALISMANIC PROPERTIES, LLC | : | |
| | : | C.A. No. 2025-CA-43 |
| Appellant | : | |
| | : | Trial Court Case No. 25 CV 310 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| CEDAR GROVE OF TIPP CITY | : | Court) |
| HOMEOWNER'S ASSOCIATION INC. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellee | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 29, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
RONALD C. LEWIS, PRESIDING JUDGE

EPLEY, J., and HANSEMAN, J., concur.

**OPINION**

JOSHUA A. KOLTAK, MICHAEL J. SCARPELLI, and CHRISTOPHER J. ELLINGTON, Attorneys for Appellant
JOSEPH E. DIBAGGIO, MICHELLE L. POLLY-MURPHY, and DERYN E. MURPHY, Attorneys for Appellee

LEWIS, P.J.

{¶ 1} Plaintiff-appellant Talismanic Properties, LLC ("Talismanic"), appeals from an order of the Miami County Common Pleas Court that granted a Civ.R. 60(B) motion filed by defendant-appellee Cedar Grove of Tipp City Homeowner's Association Inc. ("Cedar Grove"). For the following reasons, we affirm the judgment of the trial court.

## I.      Facts and Course of Proceedings

{¶ 2} This appeal involves a dispute between Talismanic, the developer of a planned residential community, and Cedar Grove, the homeowner's association for the planned community. On May 8, 2025, Talismanic filed a complaint in the Miami County Common Pleas Court for cognovit judgment and money damages against Cedar Grove. According to the complaint, Cedar Grove owed Talismanic $119,542.19 pursuant to a November 1, 2024 promissory note, which contained a warrant of attorney authorizing a confession of judgment. Talismanic attached a copy of the promissory note to its complaint. The promissory note stated that Cedar Grove promised to pay Talismanic the principal sum of $119,542.19, with interest at the rate of 4.0% per annum from November 1, 2024, in quarterly installments of $10,000 each, commencing on March 1, 2025. Talismanic alleged that Cedar Grove failed to remit the payment required by the promissory note. On the same day Talismanic filed its complaint, the trial court granted judgment to Talismanic in the amount of $119,542.10 plus interest and late charges.

{¶ 3} On June 27, 2025, Talismanic filed a motion and affidavit for examination of the judgment debtor. The trial court granted the motion and ordered that a judgment debtor exam be conducted on July 30, 2025.

{¶ 4} A day before the judgment debtor exam was scheduled to begin, Cedar Grove filed a Civ.R. 60(B) motion for relief from the trial court's May 8, 2025 judgment. According to its motion, Cedar Grove had several meritorious defenses, including the invalidity of the promissory note, apparent self-dealing that resulted in the signing of the promissory note, and violations of Cedar Grove's bylaws. Cedar Grove also stated that Talismanic had violated R.C. 5312.09 and 5312.13. Cedar Grove claimed that it brought its Civ.R. 60(B) motion within a reasonable time because it filed its motion less than 90 days from when the judgment was entered and because it had worked diligently to gather documents and information to present its meritorious defenses to the trial court. Cedar Grove attached the affidavit of Mike McDermott to its Civ.R. 60(B) motion.

{¶ 5} According to McDermott's affidavit, he was the President of the current Board of Directors of Cedar Grove and was one of the custodians for and assisted with maintaining the books and records of Cedar Grove. McDermott Affidavit, ¶ 2, 4. Talismanic was the developer and declarant of Cedar Grove and had full and complete control of Cedar Grove until November 2024. *Id.* at ¶ 5. Before November 2024, Cedar Grove's Board of Directors consisted of the following principals or agents of Talismanic: Judith Tomb, her son, and her sister, Janice Norris. *Id.* at ¶ 6-7. Shortly before Talismanic turned over control of Cedar Grove to the members of Cedar Grove, the Board of Directors "unilaterally authorized" Norris to sign the promissory note at issue in this appeal. *Id.* at ¶ 8. McDermott averred that Cedar Grove's current Board of Directors discovered that the promissory note violated Cedar Grove's declaration and bylaws and "included improper

3

expenses used to subsidize and offset [Talismanic's] costs related to the development of" Cedar Grove. *Id.* at ¶ 9-11.

{¶ 6} In addition to McDermott's affidavit, Cedar Grove attached the following to its Civ.R. 60(B) motion: (1) copies of the declaration and bylaws of Cedar Grove and amendments thereto; (2) a copy of a March 5, 2025 letter authored by counsel for Cedar Grove and sent to Talismanic; (3) a copy of a March 26, 2025 response letter from Talismanic's counsel to Cedar Grove's counsel; and (4) copies of minutes from the meetings of Cedar Grove's Board of Directors.

{¶ 7} Talismanic filed a memorandum in opposition to the Civ.R. 60(B) motion. Talismanic attached to its memorandum an affidavit of Judith Tomb and a copy of the March 26, 2025 response letter from Talismanic's counsel to Cedar Grove's counsel. Tomb averred that the cognovit note was executed by her sister and that it reflected expenses incurred by Talismanic for the benefit of Cedar Grove. Talismanic argued that Cedar Grove's motion was not filed within a reasonable time and that Cedar Grove had no meritorious defenses.

{¶ 8} Cedar Grove filed a reply in support of its Civ.R. 60(B) motion to which it attached a second affidavit of McDermott. In his second affidavit, McDermott stated that Cedar Grove's current Board of Directors had learned that Talismanic had failed to maintain a reserve fund and that all the capital contribution checks had gone to Talismanic, not Cedar Grove.

{¶ 9} The trial court scheduled an October 17, 2025 hearing on Cedar Grove's Civ.R. 60(B) motion. At the hearing, the trial court asked counsel for the parties whether they would present any testimony or just argue the merits of Cedar Grove's motion. Counsel for Cedar Grove stated that her client would rely on its motion and not present any

4

testimony.   Talismanic's attorney stated that Talismanic would argue the briefs and provide the testimony of Tomb.

{¶ 10} During her testimony, Tomb explained that she had been developing land for 51 years and that she had advanced $395,000 over the course of the development of the homes at Cedar Grove.   Tomb stated that she had only been reimbursed for approximately $180,000 of the $395,000 she had advanced.   According to Tomb, during the construction of the properties of a homeowner's association, a developer must maintain the properties and typically advances money to the homeowner's association because the association starts out with no money.   Once lots are sold to homeowners, the homeowner's association begins to collect fees and becomes responsible for the cost of maintaining and upkeeping the lots.   Tomb testified that the Cedar Grove property had poor soil conditions for growing anything.   As a result, it was very expensive to remove all the rocks and debris and seed the land.

{¶ 11} Tomb stated that she had drafted the promissory note on which Talismanic's lawsuit was based.   Her sister then executed the promissory note as the secretary of Cedar Grove's Board of Directors.   Talismanic did not use a reserve account.   Instead, "[t]he board made a decision that [the $1,000 capital contributions] would go, rather than through the middle step, it would just go directly to Talismanic as payment on account for expenses that Talismanic experienced in behalf of the HOA."   Tr. 27.   According to Tomb, she did not include any amounts in the promissory note that should have been a cost for which the developer was responsible.   Tomb characterized the promissory note as "a memorialization of the debt that [Cedar Grove] owed to the developer."   Tr. 31-32.

{¶ 12} Tomb testified that she turned all the necessary financial paperwork over to the new members of the Board of Directors of Cedar Grove.   She explained that Plaintiff's

5

Exhibit 3 delineated all the expenses that Talismanic paid on behalf of Cedar Grove and showed the crediting of the account for all the capital contribution payments made against those expenses.

{¶ 13} The trial court granted Cedar Grove's Civ.R. 60(B) motion. The court found that Cedar Grove had alleged meritorious defenses and had filed its motion within a reasonable time. Talismanic filed a timely notice of appeal.

II. **The Trial Court Did Not Abuse Its Discretion in Granting the Civ.R. 60(B) Motion**

{¶ 14} Talismanic's first assignment of error states:

The Trial Court Erred by Granting Defendant-Appellee's Motion for Relief from Judgment When Appellee Failed to Present Any Evidence at the Hearing It Requested.

{¶ 15} Our review of a trial court's decision on a Civ.R. 60(B) motion is based on whether the trial court abused its discretion. *Liberty Nursing Ctr. of Englewood, Inc. v. Valentine*, 2012-Ohio-1096, ¶ 57 (2d Dist.), citing *Gorby & Assoc., LLC v. McCarty*, 2011-Ohio-1983, ¶ 44 (2d Dist.). "'A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner.'" *North v. Eichler*, 2026-Ohio-857, ¶ 14 (2d Dist.), quoting *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989).

{¶ 16} "Civ.R. 60(B) is a remedial rule to be liberally construed so that the ends of justice may be served." *Kay v. Marc Glassman, Inc.*, 1996-Ohio-430, ¶ 8, citing *Colley v. Bazell*, 64 Ohio St.2d 243, 249 (1980). "'Civ.R. 60(B) represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and that justice should be done.'" *Aurora Loan Servs., L.L.C. v. Wilcox*, 2009-Ohio-4577, ¶ 12 (2d Dist.), quoting *Chapman v. Chapman*, 2006-Ohio-2328, ¶ 13 (2d Dist.).

{¶ 17} Talismanic's complaint and the trial court's May 8, 2025 judgment were based on a cognovit note. "[A] debtor relinquishes the possibility of notice, hearing, or appearance at an action to collect in the event of nonrepayment" by signing a cognovit note. *Buzby v. Chamoun*, 2014-Ohio-4676, ¶ 5 (8th Dist.), citing *Medina Supply Co., Inc. v. Corrado*, 116 Ohio App.3d 847, 851 (8th Dist. 1996). "The purpose of a cognovit note is to allow the holder of the note to quickly obtain judgment, without the possibility of a trial." *Id.*, citing *Fogg v. Friesner*, 55 Ohio App.3d 139, 140 (6th Dist. 1988). To accomplish this, cognovit notes are accompanied by a warrant of attorney by which the debtor provides a waiver of the prejudgment notice and hearing requirements. *Id.*, citing *Fogg* at 140.

{¶ 18} If a debtor wants to challenge a judgment obtained by cognovit note, the debtor may file a Civ.R. 60(B) motion for relief from judgment. *Id.* at ¶ 6, citing *Masters Tuxedo Charleston, Inc. v. Krainock*, 2002-Ohio-5235, ¶ 7 (7th Dist.). Ordinarily, in order to prevail on a motion for relief from judgment, the moving party must demonstrate: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time . . . ." *GTE Automatic Elec. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. To establish that the debtor is entitled to relief from judgment based on a cognovit note, however, the debtor "'need only establish (1) a meritorious defense and (2) that the motion was timely made.'" *Buehler v. Mallo*, 2010-Ohio-6349, ¶ 8 (10th Dist.), quoting *Corrado* at 851.

{¶ 19} The trial court found that Cedar Grove satisfied both requirements. On appeal, Talismanic only presents arguments relating to the meritorious defense aspect of the trial court's decision. Therefore, we need not review the trial court's finding that the Civ.R. 60(B) motion was timely made.

7

{¶ 20} "Under Civ.R. 60(B), a movant's burden is only to allege a meritorious defense, not to prove that he will prevail on that defense." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988), citing *Moore v. Emmanuel Family Training Ctr.*, 18 Ohio St.3d 64, 67 (1985). Typically, a meritorious defense is one that goes to the "substance" or "essentials" of a case. *Valentine*, 2012-Ohio-1096, at ¶ 55 (2d Dist.). "Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be in favor of the motion to set aside the judgment so that cases may be decided on their merits." *GTE* at paragraph three of the syllabus.

{¶ 21} Cedar Grove argued in its motion that it had several meritorious defenses, including the invalidity of the promissory note, apparent self-dealing that resulted in the signing of the promissory note, and violations of Cedar Grove's bylaws. Cedar Grove attached the affidavit of McDermott in support of its Civ.R. 60(B) motion, along with copies of bylaws, meeting minutes, and letters between counsel.

{¶ 22} The trial court provided the following explanation of why it found Cedar Grove had established a meritorious defense:

Here, Defendant argues that the Promissory Note upon which cognovit judgment was entered was the result of self-dealing, as "Declarant Director Janice Norris, despite serving two masters, signed a self-serving Promissory Note in favor of Declarant[.]" Defendant also challenges the final amount of the Note, stating that "[t]he Promissory Note improperly requires the Association to essentially subsidize or offset the costs incurred by the Declarant for expenses it incurred for the initial development of the Association Property throughout the Declarant Control Period and not for expenses incurred to repair and maintain the Association Property." Defendant, in

8

essence, challenges the integrity of the Note and the amount of the Note and resulting judgment. Such matters are squarely within established meritorious defenses to cognovit judgments for the purposes of Civ.R. 60(B).

(Bracketed text in original.) Decision (Nov. 12, 2025), p. 3-4.

{¶ 23} Talismanic argues that the trial court abused its discretion by relying on the affidavit of Mike McDermott, which was attached to Cedar Grove's Civ.R. 60(B) motion. According to Talismanic, "[t]he trial court, upon granting a hearing, was limited to granting or denying the Motion based on the evidence presented at the hearing." Appellant's Brief, p. 10. Therefore, Talismanic contends the trial court abused its discretion by relying on an affidavit that was not presented as evidence at the hearing. We disagree for three principal reasons.

{¶ 24} First, the Ohio Supreme Court has made it clear that a movant does not necessarily need to submit any evidence to succeed on its Civ.R. 60(B) motion, let alone evidence at a hearing on the motion. *Adams*, 36 Ohio St.3d at 20-21. As the Court explained: "It is true that neither Civ.R. 60(B) itself nor any decision from this court has required the movant to submit evidence, in the form of affidavits or otherwise, in support of the motion, although such evidence is certainly advisable in most cases. But the least that can be required of the movant is to enlighten the court as to why relief should be granted." *Id.*

{¶ 25} Second, counsel for Cedar Grove made it clear at the beginning of the October 17, 2025 hearing that Cedar Grove was relying on its motion rather than presenting any testimony at the hearing. Attached to Cedar Grove's Civ. 60(B) motion were McDermott's affidavit, letters from legal counsel, a copy of Cedar Grove's declaration and bylaws, and minutes from Cedar Grove's board meetings. The statement by Cedar Grove's

9

counsel at the hearing put Talismanic and the trial court on notice that Cedar Grove was relying on its motion and the documents attached to the motion. The fact that Cedar Grove's counsel did not then ask the trial court to admit the motion and its supporting documents into evidence does not affect whether the trial court could rely on the motion and supporting documents when making its determination under Civ.R. 60(B).

{¶ 26} Third, the legal authority Talismanic cites in its appellate brief did not preclude the trial court from considering Cedar Grove's motion and the factual evidence submitted with the motion. In making its argument that the trial court could consider *only* the testimony and exhibits presented at the hearing, Talismanic relies on the following passage from *Bates & Springer, Inc. v. Stallworth*, 56 Ohio App.2d 223 (8th Dist. 1978): "If the trial court exercises its discretion and grants a hearing on the motion, any appeal taken from the court's action thereon is not decided upon the material submitted with the motion but upon whether the evidence introduced at the hearing satisfies the three requirements of *GTE*." *Id.* at 228. According to Talismanic, as articulated by *Stallworth*, the trial court could not rely on Cedar Grove's motion and the factual evidence submitted with the motion once the trial court held a hearing on the motion. But Talismanic fails to put the quote from *Stallworth* in its proper context.

{¶ 27} In *Stallworth*, the Eighth District was faced with a situation where the movant failed to submit with his motion factual material sufficient to justify relief from judgment. *Id.* The appellate court noted that the better practice would have been for the trial court to have summarily denied the motion. However, the appellate court stated that the trial court could exercise its sound discretion to hold an evidentiary hearing. Once the trial court exercised this discretion and held a hearing, the Eighth District announced the unremarkable

10

proposition that an appellate court must *also* review the evidence submitted at the hearing and whether that evidence satisfied the *GTE* requirements. *Id.* The court explained:

> The sufficiency of the applicant's motion and any supporting factual material submitted to the trial court, standing alone, does not determine the result on appeal. The three requirements for obtaining relief from judgment under Civ.R. 60(B) create factual questions. Therefore, to demonstrate error in the trial court's disposition of such a motion after an evidentiary hearing, an appellant must supply the reviewing court with either a verbatim or narrative transcript of the evidence presented at the hearing. Once the trial court grants a hearing, the parties should be on guard to protect themselves for a subsequent appeal by securing a transcript of the evidence presented during the proceeding. See App.R. 9(B) and 9(C).
>
> With motions under Civ.R. 60(B) as with other motions after an evidentiary hearing is held in the court below, a reviewing court cannot necessarily determine that error occurred in the trial court by looking *only* to the motion and its supporting materials. In the absence of all the relevant evidence introduced at the hearing in support of and in opposition to the motion for relief from judgment, a reviewing court must indulge the presumption of regularity of the proceedings and the validity of the judgment in the trial court.
> *Ostrander v. Parker-Fallis* (1972), 29 Ohio St.2d 72, 278 N.E.2d 363.

(Emphasis added.) *Id.* In *Stallworth*, the appellant failed to submit a transcript from the evidentiary hearing, and the motion itself failed to satisfy Civ.R. 60(B). The *Stallworth* Court did not hold that a Civ.R. 60(B) motion and factual evidence submitted with the motion could not be considered by a trial court once a hearing was held on the motion. Rather, the

11

*Stallworth* decision made it clear that a reviewing court needs to review both the motion and the evidence presented at the hearing. In short, a trial court is not precluded from considering the arguments and evidence presented in a Civ.R. 60(B) motion simply because the court subsequently holds a hearing on the motion. Talismanic's arguments to the contrary are unpersuasive.

{¶ 28} Talismanic also contends that even if the trial court properly considered the affidavit of Mike McDermott, the affidavit lacked allegations based on personal knowledge sufficient to support Cedar Grove's Civ.R. 60(B) motion. Talismanic emphasizes that McDermott's affidavit included several allegations based "upon information and belief," which are not indicative of personal knowledge. Appellant's Brief, p. 10-11, citing *Wells Fargo Bank, N.A. v. Goebel*, 2014-Ohio-472, ¶ 19 (2d Dist.).

{¶ 29} We have reviewed McDermott's affidavit. While we acknowledge that McDermott used the phrase "upon information and belief" a number of times in his affidavit, this is not fatal to Cedar Grove's Civ.R. 60(B) motion. McDermott stated that he is the President of the Board of Directors of Cedar Grove and that he is one of the custodians for and assists with maintaining the books and records of Cedar Grove. These averments establish his personal knowledge of the financial records of Cedar Grove. He also asserted that the promissory note violated Cedar Grove's declaration and bylaws. McDermott based this assertion on "information and belief" *and* "the current Board's review of financial statements and other records." McDermott Affidavit, ¶ 10. McDermott also alleged that the Board of Directors that was comprised of Tomb, her sister, and her son improperly authorized Cedar Grove to remit Cedar Grove's funds to Talismanic in violation of the express terms of Cedar Grove's "Declaration and Bylaws." *Id.* at ¶ 11. McDermott based this averment on "information and belief" *and* the "Board's meeting minutes."

12

{¶ 30} McDermott's affidavit contained sufficient allegations based on his personal knowledge as the President of the Board of Directors of Cedar Grove to call into question whether the promissory note was valid and whether it improperly included expenses for which Cedar Grove was not legally responsible. These allegations qualify as meritorious defenses because they go to the substance or essentials of Talismanic's complaint against Cedar Grove. While Cedar Grove may face an uphill battle to *prevail* on its meritorious defenses to the cognitive note, we cannot conclude on the record before us that the trial court abused its discretion in finding that Cedar Grove *alleged* meritorious defenses. *Adams*, 36 Ohio St.3d at 20.

{¶ 31} The first assignment of error is overruled.

III. **Second Assignment of Error**

{¶ 32} Talismanic's second assignment of error states:

The Trial Court Erred by Admitting Unauthenticated Hearsay Evidence at the Hearing.

{¶ 33} Talismanic argues that the trial court abused its discretion by admitting Cedar Grove's Exhibit B into evidence at the hearing over Talismanic's hearsay objection. According to Talismanic, "Exhibit B is an out of court statement that was offered by Appellee for the truth of its matter asserted – as true financial records of Appellee that Appellee purports show that Appellant improperly charged expenses back to Appellee." Appellant's Brief, p. 13.

{¶ 34} Cedar Grove responds that Exhibit B does not constitute hearsay because it was not offered to prove the accuracy of the underlying financial entries. Cedar Grove also argues that the record was clear that the trial court did not rely on Exhibit B in granting relief from judgment, which renders any alleged error harmless.

13

**{¶ 35}** We have reviewed Exhibit B and the testimony from the hearing relating to it. Exhibit B appears to be a spreadsheet that shows deposits and withdrawals from a checking account. Tomb testified that she believes that Exhibit B is an altered version of records that she previously provided to Cedar Grove's current Board of Directors. Overall, there was not any useful testimony at the hearing relating to Exhibit B on which the trial court could have relied to grant or deny the default judgment. Rather, Tomb protested several times that Exhibit B was altered and that there were better records that showed what amounts were deposited and withdrawn from Cedar Grove's checking account.

**{¶ 36}** Notably, the trial court did not reference Exhibit B anywhere in its order granting Cedar Grove's Civ.R. 60(B) motion. Based on the record before us, we conclude that the trial court did not rely on Exhibit B in ruling on Cedar Grove's Civ.R. 60(B) motion. As explained in our resolution of Talismanic's first assignment of error, Cedar Grove presented sufficient operative facts through McDermott's affidavit and accompanying documents to support its Civ.R. 60(B) burden. Therefore, any alleged error committed by the trial court in admitting Exhibit B into evidence was harmless.

**{¶ 37}** The second assignment of error is overruled.

## IV. Conclusion

**{¶ 38}** Having overruled the assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, J., and HANSEMAN, J., concur.

14